Mellon. Good morning, your honors. May it please the court. My name is Andrea Roberts and I represent the appellant, Bank of New York Mellon. Can everybody hear me? Yes. Okay, good morning. My name is Andrea and I represent the Bank of New York   In this instance, this is a violation of a state mortgage recording statute where the mortgage was recorded three months prior to the commencement of this action. Specifically, the satisfaction was recorded on September 22, 2015. Plaintiffs, the appellees, did not file this complaint until December 15, 2015. We're not talking here about a statute of by its enactment of the satisfaction statutes, I think, that mortgage holders who have paid off their mortgages can be harmed by delayed recordation of the payoff. Their credit score suffers, their property can be encumbered, and by placing the requirement of a 30-day limit on recording, they express the legislature's view that this was not inconsequential to the people of New York. So the fact that the payoff, the recordation happened before a suit is filed seems to me kind of irrelevant. The legislature's act suggests that one should not file a complaint if the payoff statement is not timely recorded. Maybe you can explain why that's incorrect. Well, you still, there still has to be, the plaintiffs, in order to bring this action, still have to plead some sort of actual or risk of potential harm, and here in the complaint, the appellees failed to do that. They solely said, they solely alleged that the basis of their complaint was that appellant failed to present a satisfaction of mortgage or certificate of discharge. If they had included a line, one line, that said, in line with other decisions that have been rendered, or I don't know the legislative history of this statute, that we, on information belief, allege that we suffered a reputational injury, credit score injury particularly, and during that period, our property was incorrectly encumbered, kind of thereby slandering its title. Those would have been somewhat conclusory allegations, but those would have been, those would have been, would those have been sufficient in your view, or is something more specific required? Well, aren't they, it's still insufficient to establish a particular, a harm that is particularized, such that it affects the actual plaintiff in a personal and individual way, and specifically with the facts at hand, like in the Nick Law decision in the 11th Circuit, the satisfaction had already been recorded before this action was commenced. But suppose there was a risk, a risk of concrete harm, and during the time that the mortgage satisfaction was not filed, would that be sufficient? And if not, why not? Well, I would, but well, the risk of potential, I mean, if they alleged a risk, that would be different, however, again, it's specific to each individual at the time the action was complained. So maybe had, in another instance, the satisfaction not been recorded, there could have been a risk of potential harm. Again, it would have had to have been alleged, but in the case, in the facts at hand, none of the possible potential risks were pled, and nor can they, because the harm were not, never came to pass, again, because the satisfaction had been recorded. I think there was an allegation that one of the plaintiffs suffered mental perturbation and found out that he had to retain counsel and do a whole lot of stuff in order to come out the other side. Well, yes, however, I'm sorry, that was, I'm sorry, but that was raised for the first time in opposition to the underlying motion to dismiss. So when looking as to whether a party has standing, you look to the four corners of the pleadings, and that was quite kind of, in a sense, an effort to correct any failures in the pleadings, regardless, they're hypothetical, and any, and the fear, and essentially by, they're hypothetical future harms that were not impending at the time the action was commenced. And even so, any potential harm must be severe, it was not, it was a general vague allegation. Judge, I think Judge Pooler is trying to interject a question. I'm sorry, Your Honor. I was trying to let counsel know that having reserved three minutes for rebuttal, her argument time has expired. Thank you, Your Honor. We will hear from plaintiff's appellees. Counsel. Good morning, Your Honors. This is Seth Lesser for plaintiff's appellees. I don't believe I need to, well, let me just address in passing the question Judge Jacobs raised quite briefly about whether a state enactment can suffice, and I believe the answer is indeed yes. On page 11 of our brief, we cite the other circuits that agree, and our amicus, the AARP, points to the National Guarantee Trust case from 1945. Well, we haven't decided that yet. I'm not sure, Your Honor. I confess. I'm not sure. This court has. I said yes. However, the National Guarantee Trust was the Supreme Court, so I think that might have some impact, but certainly we obviously would agree that I did not check, I confess, as to whether this court itself has squarely addressed that issue now. But I don't think there has been. I'm sorry. If you've answered that question, I think that, I wondered if you could turn, please, to the absence of any allegations of personal harm with regard to risk or reputational injury or slander of title type harm that was suffered in the period before the correction was, the satisfaction was recorded. Certainly. You just plead, as far as I could see, you just plead that there was a statutory violation and allege nothing further. Could you, that looks quite barren to me. Could you address that concern? I'll address that two ways. Firstly, as to what is required. I believe it clear, as Judge said, the harm did not materialize. And the rulings of this court previously, it's durable, I think the Cohen case was mentioned, it is, and this is what... Excuse me, I'm going to interrupt for a second. I'm not talking really about whether it materialized or not, but you didn't allege any harm other than that the statute was violated. And you didn't, the plaintiffs didn't say that they had suffered reputational injury or they believed that they had suffered reputational injury or risked suffering reputational injury in the period before, during the violation. And I think we still have to look, even if it's an intangible harm, it has to be concrete and particularized. So I guess what you're saying is that, in fact, you don't, in this circumstance, to satisfy Spokio, you don't need to plead more than that the statute was violated. Is that right? Correct. And that is because, as this court said, it's durable, which is actually one of the leading decisions in the country. Parenthetically, the Ninth Circuit cited this language on the demand from Spokio itself, the procedural violation can by itself manifest concrete injury. The point being that nothing more than... It can, but we know from Spokio that it doesn't necessarily do. Right. And that does not mean that the individual plaintiff has to demonstrate it with respect to themselves. If, for example, in the Cone case, which the court decided, there was no allegation in the complaint that the individual who was a person who was facing a debt collection had actually suffered any injury at all. The mere fact that they may have. So the Spokio logic is where a legislature has conferred a procedural right in order to protect the concrete interests, those things that were just mentioned, slander of title, clear title, reputational, credit, and the like, which is what we're dealing with the satisfaction statutes. A violation of the procedure may demonstrate a sufficient risk of harm to the underlying interest to establish concrete injury without the need to allege, without the need to allege any additional harm. That's Spokio's very words. There's no need to allege. One could. And indeed, your honors, in this case, in the district court, we did say and request if the court found the allegations to be insufficient on this motion dismissed that we could and would allege more, which goes ultimately to the point that was mentioned about the allegations here of both emotional stress and importantly time, substantial time spent. An affidavit was put in and under this court's decisions in Cargill and Foresight and Bauer that the court can consider them. And even if the court couldn't consider them, of course, we ask for leave to amend. But my point, my jurisdictional point, my just prudential point is twofold. First, there is no need to allege, much less show, much less prove any additional harm beyond the procedural violation. That is Spokio. So for a claim of this type of statute, it need not be alleged moreover. Counsel, this is Judge Gulick. Is it your argument that Bank of New York Mellon can raise the issue of no actual harm as an affirmative defense, but that doesn't go to your statement of standing? I believe that for a violation of satisfaction statute, no, individual harm is not necessary to obtain redress on the merits, no. And that's obvious. There was no provision to provide a rebate if belatedly a bank records a satisfaction. Counsel, you don't doubt if this case moves forward and we uphold the finding of the district court that there is standing, that as soon as the issue is joined, Bank of New York Mellon will claim that there was no harm to your client and seek dismissal on summary judgment or 12D6. You don't doubt that, is that correct? I actually somewhat doubt it because this is a strict liability statute. It is a procedural violation of which, like the FCRA in Struble or the FDCPA in Cone, assesses liability, assuming there's anything else that has to be within the statutory parameters. It could be asserted, certainly. This is Judge Jacobs. I mean, the more you argue that it is strict liability and you don't have to show any harm, the more pressing the question becomes as to whether the state in enacting this has had in mind that this creates anything more than a procedural right. That goes to the analysis of what is the right, what is the importance of the statute. Of course, in every one of these cases, whether it's the FCRA, the FDCPA, the TCPA, or the like, where the jurisprudence is firmly held, you do not need to assert or allege the harm to you if the right at issue is substantial enough. But I agree. Obviously, the way it always entails... I'm sorry, I think I'm cutting something off. This is Judge Carney. If you could look at Struble for a minute, Struble considered various aspects of the Truth in Lending Act and found some substantial enough to create, to endow a plaintiff with standing and others not. Struble, of course, also cited Nick Law, which found contrary to your position about the instant recordation statutes. And so it seems to me that something more than alleging the violation of the statute practically is going to be required in order to establish Article III standing, that there was a sufficiently concrete risk of injury. And so I'm concerned about what we look at, the legislative history of the statute to determine what the state legislature was concerned about, what harms it was trying to prevent, or do we look to what these plaintiffs might be able to amend their complaint to say that they are concerned about? I mean, what do we look to? What's our touch point? Yes, three points that I don't want to run out of time. The first is you're absolutely right. It depends on the statute and what are the provisions of the statute and whether or not they are substantial. Respectfully, Your Honors, I do think it's almost unquestioned in this area that ensuring clear title is of extraordinary importance. It's been true since literally the common law in the 13th century down to the right to obtain clear title in the laws of New York State for well into the 19th century as well as today. It affects people's credit. We've laid that out at substantial length in the brief. That's point number one. Point number two, and yes, you do have to, that's a funny analysis. Is there something that really matters in the world, or do you have something that's an ephemeral thing? Point two, we did, as has been pointed out, do have here the allegations which are under the case law as we cited in pages 29 and 30. Specifically, if nothing else, the harm to my client in terms of the emotional distress and time, well found under the case law. Three, there's an implicit assumption that there is a, when the title is recorded, that that ends matters in all these questions. That is not true. That is not how, as AARP pointed out in its amicus brief here, the way title works, the way credit works in America, the moment that something occurs that changes one's status in terms of whether it's used for credit reporting, whether it's used for tenant landlord, whether it's used for insurance purposes, does not magically transform the credit reports. Credit reports get pulled in the real world only periodically by the entities, the CRAs, the credit reporting agencies. Matters that have changed go for months on end without any rectification. That happens all the time. Indeed, just recently, the court, I don't know if any of you were on this particular 23-F appeal, I have a case below where a credit reporting agency took six months to rectify. So, and then 23-F appeal was denied. But let me ask you this. If this really is a cloud upon title, and it's so all-fired important, why would the state legislature give a bank 30 days in order to file the satisfaction and subject it to no more than a, really, a $500 fine for failure to do it for 60 days? Well, it's a graduated fine that increases over time. I understand, but it's... Previously, there was no... It's no fine for 30 days. Previously, there was no monetary... Excuse me. Yes, go on. For the first 30 days, it's no fine at all. So, the state is tolerating this terrifying cloud upon title that causes people to experience psychological misery. It just doesn't seem to make sense. And also, it seems to me that if we adopt your view, we'll be creating a I mean, that's fine if it's justified, but it looks like this is the same issue. And, you know, we do kind of hesitate before we create a circuit split. Two points, if I may, Your Honor, and no matter of time, if I may answer. Go ahead. The first is, of course, the... I'll address the second of your points first. The first is the NICLA decision, and most respectfully, and it's a fine judge whose name was on it, did not address whatsoever in that decision the point, the critical point, which is indeed that where a legislature confers a right that there's no additional harm being alleged or proven from spoke ill. It's just not in that decision. That's one. Two, Your Honor's concern that maybe the legislature was not draconian enough. Respectfully, that's the legislature's decision. One could equally argue that many of the other federal statutes that we've been discussing also could have been... They're also a grace period and the like. My point being that ultimately, this court's decisions in Strubel, in Cohn v. and in others would be inexplicable, because in every case, the harm disappeared. Not only the risk of harm had disappeared, but the actual harm had disappeared in all of those cases by the time that the plaintiff came to court. For example, in Cohn, and the court doesn't say that there's no allegations in case they actually suffered the harm for not knowing the right name of the creditor, but that he may have. Because by the time, and any of the informational cases of that sort, by the time the plaintiff learns that the creditor's name was wrong and had not been harmed otherwise in their life, it's moot. Just as the recording here is argued by Bank of New York to suffice and to end the claim. Yes, but here, the recording was done three months before you filed the case. I'm not sure that makes it moot at all, but on the logic of the argument you just made, it would. I'm not sure. I guess we're using moot in the exact same sense, Your Honor. My point, first of all, a few moments ago was the risk of harm continued undoubtedly well after the recording actually took place. And ultimately under New York law, it will not matter because the violations have occurred and the right to obtain redress to the mortgage holder, the borrower, still exists. My point is rather that the risk of harm in all these cases was true as well. There was no allegation of actually any specific manifest injury by virtue of the things that the court itself said, yes, this matters enough that for these claims under the Fair Credit Reporting Act, it matters. There were other claims under the Fair Credit Reporting Act the court said did not matter because it actually didn't apply whatsoever to that plaintiff. So that plaintiff would not have been in what the court discusses as the group that is at issue, the group for whom protection is enacted by the legislature in the legislation to protect. So indeed, whether you look at the history, the common law, the importance, and we could all debate whether the legislature's ramping up of the $500,000, $1,500 penalties is sufficient or not, but it does create a procedural right and interest and something that, you know, as we put page after page in our brief, and we could have gone for far longer, this does impact people's lives. It is indeed a time form of slander and title. It has continuing effects even after a credation may or may not be. Three months. And, you know, we do not know without pulling literally many credit reporting agencies, my clients' records with their dozens of credit reporting agencies, whether or not there was an insurance provision that could have been effective. When one of my clients moved to Georgia and rented an apartment, the landlord could have done a credit pull from a landlord tenant reporting agency, which, by the way, those do not update for months on end, their underlying databases, and paid more in rent. It is the risk of harm that motivates the court in the cases of Distributeable and in Cone and the like. And the risk of harm by not having the most substantial asset in people's lives in America, having their title cleared on that or that indebtedness taken off of their records is truly important. That's why our counsel in the case is the National Consumer Law Center. That's why the ARC has joined us as amicus here. Counsel, your time has expired. Thank you. Ms. Roberts, we came three minutes. Counsel, we'll hear from you. Yes, thank you, Your Honors. I won't take up too much more of the court's time. Counsel listed a number of arguments as to why the appellee suffered a real risk of harm. However, he argues that they moved to Georgia, but they obviously were able to obtain an apartment. Again, there's nothing in the complaint that establishes a real, concrete, particularized, actual or imminent risk of harm. Any of the arguments that were raised in opposition to the motion are speculative. They did not come to fruition and are not particularized. As the court pointed out in Struble, there were certain provisions that the court found that the statute did not satisfy the concrete injury requirement of standing, and in Struble, the court relied on the Nick Law case, and it's respectfully submitted that Nick Law, which is identical to the facts at hand, should be applied in this instance, especially because, similar to Nick Law, the satisfaction was recorded three months before the appellees commenced this action. Therefore, like in Nick Law, the appellees did not even have a risk of harm. And I cease the rest of my time, Your Honors. Thank you, Counsel. Thank you both for reserved decisions.